TM:AHT/JD
F.#2011R02050

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                12 CR 50 (S-6) (CBA)

ANTHONY Romanello,
  also known as "Rom,"

          Defendant.

- - - - - - - - - - - - - - - - - - X


GOVERNMENT'S MOTION <u>IN LIMINE</u> REGARDING THE
ADMISSIBILITY OF CERTAIN EVIDENCE AND TO
<u>PRECLUDE THE ADMISSION OF CERTAIN EVIDENCE AT TRIAL</u>


                          LORETTA E. LYNCH
                          United States Attorney
                          Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201


Amir H. Toossi
Jack Dennehy
Assistant U.S. Attorney

### PRELIMINARY STATEMENT

The defendant is charged in a Superseding Indictment, which alleges on or about and between November 1, 2006 and May 31, 2008, the defendant Anthony Romanello participated in the use of extortionate means to collect and attempt to collect an extension of credit and conspired to do the same.

The government respectfully submits this memorandum of law (1) to advise the Court of certain evidence that the government seeks to admit at trial; and (2) in support of the government's motion in limine to preclude the defendant from introducing any arguments or evidence at trial regarding prior acts of good conduct or the government's alleged motives in prosecuting this case.

Specifically, the government anticipates offering the following types of evidence at trial: (a) evidence regarding defendant Romanello's reputation and association with members of organized crime and (b) evidence regarding a prior extortion committed by defendant Romanello.  For the reasons set forth below, the evidence that the government seeks to introduce at trial is highly relevant and the probative value of the evidence far outweighs any potential prejudice to the defendants.

In addition, the government moves, under Federal Rules of Evidence 401, 402 and 403, to preclude the defendant from admitting any evidence at trial regarding prior acts of good conduct, including but not limited to defendant Romanello's

service in the military, the provision of medical care to his ailing wife, or acts of kindness directed at potential witnesses because such evidence is irrelevant and the admission of such evidence would likely confuse the issues at trial, mislead the jury, and result in unfair prejudice to the government.  Lastly, the government moves to preclude the defense from presenting arguments to the jury in opening statement, cross examination of the government's witnesses, the defense case (if any), and summation, concerning the government's alleged motives in prosecuting this case against Romanello.

## STATEMENT OF FACTS

I.  The Defendant

        Evidence at trial will establish that defendant Anthony Romanello, also known as "Rom," is an inducted member and acting captain of the Genovese crime family, a violent criminal enterprise that engages in a litany of crimes, including extortion, murder, assault, and other crimes intended to obstruct justice.  In connection with his membership in and association with the Genovese crime family, a grand jury sitting in this District previously returned a Superseding Indictment in United States v. Romanello, 10 CR 929 (S-1)(ILG), charging Romanello with participating in a racketeering conspiracy between January 1990 and July 2006, including illegal gambling, larceny by extortion and extortionate collection as predicate racketeering acts.[1]

II.  The Nature of the Instant Charges

        By way of background, this case arises out of the government's investigation of a wide variety of crimes committed in Brooklyn, Queens and Staten Island, New York, by various members and associates of organized crime.

_____

        [1]    On January 10, 2012, Romanello entered a plea of guilty to RICO conspiracy, including predicate acts of extortion and illegal gambling.  United States v. Romanello, 10-CR-929 (S-1)(ILG).  Romanello admitted, under oath, to his participation in the affairs of the charged enterprise, the Genovese crime family, between January 1990 and July 2006.

The Superseding Indictment charges Romanello with substantive counts (Counts Two and Three) of extortion and extortion conspiracy.  More particularly, Romanello is charged, along with Nicholas Santora,[2] with extortion and extortion conspiracy related to John Doe #1 and John Doe #2, between approximately November 1, 2006 and May 30, 2008.  The evidence of this crime will come from consensual recordings, cooperating witness testimony, testimony of federal agents who supervised the investigation, and testimony regarding the rules, structure, hierarchy and protocols of La Cosa Nostra ("LCN"), particularly with respect to the Bonanno and Genovese crime families, and the relationship that exists between members and associates of the five families of LCN.

Beginning in 2006, John Doe #2 began cooperating with law enforcement.  At that time, John Doe #2 was on record with Vito Badamo, a Bonanno family soldier assigned to Santora's crew.  In the summer of 2006, Rocky Napoli, a partner at First Capital Mortgage in Mineola, New York, loaned John Doe #2 $30,000, a loan that John Doe #2 did not intend to pay back because he felt that Napoli owed him money for a mortgage refinancing referral.  A month later, Napoli demanded repayment.  When John Doe #2 refused, Napoli sought to collect the money through Romanello, a

---

[2]   On July 3, 2012, Santora pleaded guilty to Count Three of the Superseding Indictment.

captain in the Genovese crime family.  In response, John Doe #2 sought Santora for representation at an organized crime "sit-down" with Romanello.

On January 11, 2007, John Doe #2 recorded the above-described "sit-down," which was initially attended by Badamo, Santora, Romanello and Napoli.  Santora represented John Doe #2 and Romanello represented Napoli.  During the "sit-down," Romanello stated that Napoli felt he was owed $30,000.  Santora responded that Napoli should not have to pay a commission twice, but that if John Doe #2 could prove that the loan came from him, he should be paid.  Santora stated that if Napoli had already paid a commission, then John Doe #2 should get his money from the person that received the commission.  John Doe #2 stated that he believed John Doe #1 received the commission.  Romanello asked Santora how he thought the conflict between Napoli and John Doe #2 should be resolved, and Santora responded that they needed to speak to John Doe #1 to explain what happened with the commission.  John Doe #2 called John Doe #1 and asked him to come to the "sit-down."  Badamo stated that Napoli had split the commission with John Doe #1 while John Doe #2 was incarcerated. John Doe #1 arrived at the "sit-down" and claimed that the money he received was for the closing fees.  John Doe #2 and John Doe #1 argued about whether this was correct.  John Doe #2 stated that Napoli and John Doe #1 told him that there was no money in

the deal and that that was a lie.  Santora stated that he thought the problem could be resolved.  Santora further stated that John Doe #1 was entitled to a share of the money.  Romanello and Santora decided to get back together the next Thursday to try and resolve the problem.  Santora advised John Doe #2 to be flexible. After the "sit-down," Santora told Badamo that "all these guys are around you (Badamo)" and that Badamo needed to tell them "what is right."  Santora stated that John Doe #2 must collect the money from John Doe #1 because Napoli was paying John Doe #1.

After the "sit-down" on January 11, 2007, John Doe #2 continued to record conversations with Anthony Santoro and Vito Badamo.  During those conversations, John Doe #2 continued to discuss the dispute with Rocky Napoli with Badamo, and, on March 26, 2007, Badamo informed John Doe #2 that John Doe #2 would have to pay "12 or 15."  Later, on April 25, 2007, Badamo told John Doe #2 that John Doe #1 would pay the rest of the money owed to Napoli but that Napoli "has to get paid first."

Subsequent recorded conversations demonstrated that John Doe #2 and John Doe #1 were being extorted by Badamo and Santora and that proceeds of the extortion were delivered to Romanello.  For example, on April 27, 2007, Badamo told John Doe #2 that "there's no way around" paying Romanello.  Badamo stated that "we" (referring to the Bonanno family) did something to "them" (referring to the Genovese family) that had nothing to do

with Badamo or Romanello, but that John Doe #2 and John Doe #1's money was being used to compensate the Genovese family.  Badamo told John Doe #2 and Anthony Santoro, an associate in the Bonnano family, to go and see John Doe #1 and tell him that he was "on the hook for 15" and that he would have to make payments every week.  Badamo stated that if the payments were not made, Badamo would be "thrown to the wolves."  Santoro and John Doe #2 then went to speak to John Doe #1.  On the way to see John Doe #1, Santoro told John Doe #2 that he did not want to argue with anybody over the money and would rather "cut their eye out" than argue with them.  However, when John Doe #2 and Santoro met with John Doe #1, John Doe #1 claimed that he had an agreement with Badamo whereby he no longer owed any money.  Santoro and John Doe #2 returned to Badamo and told him what John Doe #1 had said.  Badamo stated, "We got to get that money" and that he would set up another meeting.  Badamo then told Santoro that he needs "to give him (John Doe #1) a beating" and "next time we see him (John Doe #1), we go to work on him and leave him in the street."

On May 16, 2007, John Doe #2 consensually recorded another conversation with Badamo in which Badamo told John Doe #2 that John Doe #1 would "take care of his end" but that John Doe #2 had to give Romanello a "schedule of payments" and would have to pay $200 per week.  With respect to John Doe #1, Badamo stated

he would spend six months in the hospital if Badamo sent Santoro and that John Doe #1 "needs to be put in his place."

In subsequent recorded conversations with Badamo, Badamo collected money from John Doe #2 on behalf of Romanello and admonished John Doe #2 when he fell behind in his payments to Romanello.  For example, on September 10, 2007, John Doe #2 delivered $1,400 to Badamo; on another occasion John Doe #2 delivered $5,000 to Badamo for payment towards the debt to Romanello.  Several weeks later, Badamo confirmed that the money had been delivered to Romanello and that Romanello was thankful that the money was delivered to him despite his home confinement.

**ARGUMENT**

I.   Evidence of Romanello's Reputation and Association with the
     Genovese Family and Prior Criminal Acts Is Admissible

     At trial, in connection with establishing the charged

offenses, the government anticipates offering evidence of

defendant Romanello's reputation and association with the

Genovese family, including the testimony of a former member of

organized crime and surveillance photographs of Romanello meeting

with various members of the Genovese and Bonanno families.  In

addition, the government plans to introduce evidence regarding

the defendant Romanello's involvement in a prior extortion in his

capacity as a member of the Genovese family.

     A.   The Evidence of Romanello's Reputation
          and Membership in the Genovese Family is Directly
          Relevant to and Inexorably Intertwined with the
          Evidence of the Charged Crimes

     For the reasons stated below, the Court should permit

the government to introduce evidence of Romanello's membership in

the Genovese family, as well as evidence of organized crime's

structure rules and customs.  Such evidence is highly relevant to

both Romanello's state of mind and whether a reasonable person

who was the victim of the extortion charged in Count Two and

Count Three would have been placed in fear if the circumstances

were as John Doe #1 and John Doe #2 believed them to be.

     As the Second Circuit has explained, "[t]o be relevant,

evidence need only tend to prove the government's case, and

evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997).  Accordingly, "[r]elevant evidence is not confined to that which directly establishes an element of the crime." Id.; see also Fed. R. Evid. 401, 402. Indeed, as the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

        "Extortion" for the purposes of Title 18, United States Code, Section 894, "includes any act or statement which constitutes a threat if it instills fear in the person to whom [the threat is] directed or [is] reasonably calculated to do so in light of the surrounding circumstances." United States v. Pacione, 738 F.2d 567, 572 (2d Cir. 1984) (quoting United States v. Sears, 544 F.2d 585, 587 (2d Cir. 1976)) (modification omitted); see also United States v. Natale, 526 F.2d 1160, 1168 (2d Cir. 1975); United States v. Curcio, 310 F. Supp. 351, 357 (D. Conn. 1970); 18 U.S.C. § 891(7).  As the Second Circuit has observed, the rationale behind this broad definition of extortion under Section 894 is best understood against the backdrop of Congress's efforts to combat organized crime.  Pacione, 738 F.2d

at 570. Due to the nature of LCN families, "loan sharks connected with organized crime rarely used force, or even made explicit threats to do so, because they found it unnecessary. A loan shark's victim knew all too well that if he did not pay, a likely result would be bodily harm to him or his family." Id.

Accordingly, to evaluate whether conduct comprises an extortionate threat, all of the surrounding circumstances must be considered. Significantly, "it is the conduct of the defendant, not the victim's individual state of mind, to which the thrust of the statute is directed." Natale, 526 F.2d at 1168; see also United States v. Polizzi, 801 F.2d 1543, 1548 (9th Cir. 1986) (observing that it is the defendant's actions, "not the mental state produced in the debtor" that is the focus for the jury).

Important to the instant analysis, evidence of a defendant's reputation "may be used to show the state of mind of both the defendant and the victim." United States v. Dennis, 625 F.2d 782, 800 (8th Cir. 1980) (emphasis added). As the Dennis court explained,

> If a man makes vaguely menacing statements, aware that he is commonly known as a violent man, then it is a reasonable inference that he intends to instill fear. . . . It is unlikely that the defendant is unaware of his own reputation for violence; reputation, by definition, reflects general knowledge in the community, and, if anyone is a member of the relevant community, it is the defendant himself.

Id. at 800 (quoting Goldstock & Coenen, Controlling the
Contemporary Loanshark: The Law of Illicit Lending and the
Problem of Witness Fear, 65 Cornell L. Rev. 127, 200-01 (1980));
see also Pacione, 738 F.2d at 572 (citing Dennis and Goldstock &
Coenen).  Similarly, in the context of an extortion under the
Hobbs Act, the Second Circuit has held that where one of the
elements that the government must prove is the instillation of
fear, bad reputation evidence may be admitted as "such a
reputation frequently conveys a tacit threat of violence."
United States v. Mulder, 273 F.3d 91, 103 (2d Cir. 2001) (quoting
United States v. Tropiano, 418 F.2d 1069, 1081 (2d Cir. 1969)).
The reasoning of Dennis, Mulder and Tropiano applies with equal
force here.

In this case, the government seeks to admit evidence of
Romanello's membership in the mafia as well as his ongoing
association with members of the Genovese family.[3]  Further, the
government expects to call a cooperating witness ("CW#1"), who
was an inducted member of the Bonanno family for approximately 12

---

[3]     In connection with this association evidence, the
government seeks to admit the defendant's plea allocution in
United States v. Romanello, 10-CR-929 (S-1)(ILG), in which the
defendant admitted being a member of the Genovese family.  The
defendant's plea allocution is admissible as an admission under
Rule 801(d)(2)(A).

years, to testify about his interactions with the defendant, including a prior extortion attempt (described below).[4]

Accordingly, this evidence is directly relevant to the charged extortion as it tends to show an implied threat of violence during the "sit-down" that the defendant attended on January 11, 2007.  Further, the evidence of Romanello's association with the Genovese family strongly reveals Romanello's state of mind and intentions when he represented Napoli in the January 11, 2007 "sitdown."

It is well settled that Section 894 does not require that a victim actually be placed in fear.  Natale, 526 F.2d at 1168; see also Polizzi, 801 F.2d at 1548 (observing that "[t]he person to whom threats are made could be a government agent, or not be in actual fear for some other reason, and yet a section 894 violation could occur").  Rather than having to prove actual fear, the government has met its burden when the evidence establishes that the defendant intended to make a threat and that a reasonable person would have been afraid under all of the surrounding circumstances.  Here, Romanello's representation of

---

[4]    CW#1 is also expected to testify regarding (a) the structure and operating principles of the organized crime families of LCN in the New York City area; (b) the meaning of certain common LCN terminology used on the consensual recordings, such as "sit-down," "juice," "points," and "West Side"; (c) LCN's use of "sit-downs" to conduct the business of LCN; and (d) the binding effect of the decisions made at "sit-downs" and the possible consequences of breaching agreements made at "sit-downs."

Napoli at the "sit-down" on January 11, 2007, his agreement with Santora that John Doe #1 and John Doe #2 were both responsible for repayment of the $30,000, and his status in the community as a member of the Genovese family, coupled with evidence of his actual association with gangsters, make clear that the defendant, together with others, intended to instill fear in John Doe #1 and John Doe #2.

Lastly, the evidence regarding Romanello's participation in this sit-down is relevant and inextricably intertwined with the government's proof of the charged extortion in that it explains how CW#1 met Romanello and how CW#1 is in a position to know about Romanello's involvement in organized crime.

Thus, in light of all of the surrounding circumstances, i.e., Romanello's organized crime membership and relationship with members and associates of the Genovese family, a reasonable debtor in John Doe #1 or John Doe #2's position would undoubtedly have been placed in fear by Romanello's statements on January 11, 2007. Accordingly, the evidence of Romanello's relationship to organized crime constitutes important circumstantial evidence to show the defendant's state of mind. See Dennis, 625 F.2d at 800; Pacione, 738 F.2d at 572.

B.   The Evidence of Romanello's Association with
     Organized Crime and Prior Extortion Attempt
     Is Admissible Under Rule 404(b)

In the alternative, in an abundance of caution, the government offers the evidence of Romanello's organized crime membership in and association with the Genovese family under Federal Rule of Evidence 404(b).[5]  Further, evidence of the defendant's prior extortion attempt (described below) is admissible under Rule 404(b) as evidence of the defendant's knowledge and intent with respect to the instant charges.

The Second Circuit follows an "inclusionary" approach to 404(b) evidence.  United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996).  Accordingly, evidence of prior bad acts is admissible "unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402."  Id. (internal citations omitted); see also

---

[5]    Federal Rule of Evidence 404(b) provides, in pertinent par, as follows:

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. [...] This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Huddleston v. United States, 485 U.S. 681 (1988); United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000).

> i.   The Evidence of Romanello's Association
>      with Organized Crime is Admissible
>      Under Rule 404(b)

The Second Circuit has repeatedly and consistently held that evidence pertaining to how members of a conspiracy met, committed crimes together and grew to trust each other over time is relevant and admissible to explain the relationship between a defendant and his co-conspirators in the charged conspiracy.  See Williams, 205 F.3d at 33-34; Pascarella, 84 F.3d at 72-73; United States v. Pipola, 83 F.3d 556, 565 (2d Cir. 1996); United States v. Araujo, 79 F.3d 7, 8 (2d Cir. 1996); United States v. Alli-Balogun, 72 F.3d 9, 11-12 (2d Cir. 1995); United States v. Rosa, 11 F.3d 315, 334 (2d Cir. 1993); United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990).

In this case, in order to explain the relationship between the defendant, Santora and Badamo, and the important question of how sufficient trust was developed between them to commit the charged crimes, evidence of defendant Romanello's membership and position in the Genovese family should be admitted.  Without this testimony, the jury will not understand the relationship between Romanello, Santora and Badamo, which is critical to understanding the implicit threats of violence that

accompanied any agreement made at the January 11, 2007 "sit-down."

>             ii.   Evidence of the Defendant's Prior
>                   Extortion Attempt Is Admissible
>                   as Proof of His Knowledge and Intent

The Second Circuit has also repeatedly and consistently held that evidence pertaining to a defendant's prior crimes may be admissible as proof of the defendant's intent and knowledge. See United States v. Bok, 156 F.3d 157, 165-66 (2d Cir. 1998) (intent); United States v. Clemente, 22 F.3d 477, 482-83 (2d Cir. 1994) (knowledge and intent); United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993) (intent).  To demonstrate the relevance of a prior act in establishing the defendant's knowledge of a current act, the government must identify a similarity between the crime charged and the prior act.  United States v. Brand, 467 F.3d 179, 197 (2d Cir. 2006) (holding that if the government can show "only a similarity or some connection to establish that a prior act is relevant," then the uncharged act evidence is generally admissible to prove state of mind) (internal quotation marks omitted).

The government seeks to introduce evidence of a prior extortion committed by the defendant, which demonstrates the defendant's intent and knowledge in the instant case.  CW#1 is expected to testify that in approximately 1993, John Doe #3, a Bonanno family associate close to CW#1, incurred sports betting

debts in placing bets through a sports betting operation run by
"Taj."  After John Doe #3 began having trouble paying the debt,
John Doe #3 asked CW#1 to speak to Anthony Federici, a Genovese
family member who controlled the sports betting operation.   In
CW#1 and John Doe #3's discussion on this subject, John Doe #3
understood that once a payment plan was resolved between Federici
and CW#1, John Doe #3 would be obliged to pay, under penalty of
physical harm.   Thereafter, CW#1 had a "sit-down" with Federici,
which was attended by Romanello, where they agreed that John Doe
#3 would pay five hundred dollars per week on the debt, and that
the payments would be taken to Romanello's organized crime social
club.   Pursuant to that arrangement, CW#1 brought John Doe #3's
payments to Romanello at the club.   Based on Romanello's
involvement in the "sit-down" and subsequent conversations with
CW#1, Romanello understood that the payments were being made
pursuant to the agreement reached as a result of the "sit-down"
between Federici and CW#1, with respect to John Doe #3's sports
betting debt.

        This evidence of the defendant's participation in a
prior extortion is directly relevant to proving both the
defendant's knowledge and intent concerning the defendant's
actions in the present extortion conspiracy.   The defendant's
involvement in the 1993 extortion mirrors the defendant's
involvement in the present extortion.   In both instances, members

of organized crime had a monetary dispute that was resolved
through a "sit-down."  The defendant was present at both
"sit-downs," and the members present at the "sit-downs"
determined sums that were to be paid to the defendant.  At both
"sit-downs," the implicit penalty for failure to pay was physical
harm.  Thus, the evidence of the prior extortion is similar to
the current extortion with which the defendant has been charged,
in both the type of actions that occurred and the role that the
defendant played in the extortions.  See, e.g., United States v.
Ozsusamlar, 428 F. Supp. 2d 161, 166 (S.D.N.Y. 2006) (holding
that evidence of an extortionate collection of a debt through
threatened violence was adequately similar to establish intent or
knowledge necessary for a similar collection of a debt); United
States v. Lombardozzi, No. 02-CR-273 (PKL), 2003 WL 1907969, at
*4 (S.D.N.Y. April 17, 2003) (holding that evidence of prior
loans made by the defendants was relevant when the defendants
played similar roles in the crimes charged).

        Finally, the evidence of Romanello's other acts and
connection to organized crime explains why Badamo began
collecting money from John Doe #1 and attempted to collect money
from John Doe #2.  Specifically, after Santora was incarcerated
in February 2007, Badamo began communicating directly with
Romanello and repeatedly told John Doe #1 that Romanello had to
be paid because of something "our guys did to their guys."

20

Badamo further informed John Doe #1 that if the payment was not made, Badamo would "be thrown to the wolves."  Romanello's membership in the Genovese family explains these comments and demonstrates the binding effect of the January 11, 2007 "sit-down."  Accordingly, evidence of defendant Romanello's other acts and of his connection to organized crime should be admitted at trial as it is directly relevant to the charged offenses.

     With respect to the evidence of Romanello's organized crime membership, association with the Genovese family and prior extortion attempt, the probative value of this evidence is not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.  See, e.g., Roldan-Zapata, 916 F.2d at 804 (in prosecution for conspiracy to distribute drugs, evidence of defendant's prior drug dealing with co-conspirator was not unduly prejudicial).  Here, the government seeks to introduce evidence of the background circumstances linking the defendant and his co-conspirators, all to provide a complete picture of the conspiracy, and to explain the conspirators' conduct and the recorded conversations.  The Second Circuit has permitted the introduction of far more potentially prejudicial evidence in comparable circumstances.  See id. at 804 (probative value of informant's testimony concerning pre-existing drug trafficking relationship with defendant outweighed potential prejudicial effect); United States v. Brennan, 798 F.2d 581, 589-90 (2d Cir.

1986) (evidence of defendant's prior involvement in fixing a case
not unduly prejudicial; admissible to help jury understand
contours of illegal relationship between defendant and government
witness); accord United States v. Harris, 733 F.2d 994, 1006 (2d
Cir. 1984) (collecting cases).

Given the highly probative value of the evidence here,
any prejudicial impact is, by comparison, wholly insufficient to
justify its exclusion.  Even were there a danger of undue
prejudice, any such risk could be mitigated effectively by a
cautionary instruction limiting the jury's consideration of the
evidence to the purposes for which it is offered.  See, e.g.,
United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991);
United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984).

II.  Romanello Should Be Precluded from Introducing
     Evidence of Prior Good Conduct

The government moves in limine to preclude the
admission of any evidence or argument at trial by the defendant
regarding prior good conduct, including but not limited to,
evidence of defendant Romanello's military service, his care of
his ill wife, and acts of kindness directed at potential
witnesses in the case.  Any evidence on these topics is totally
irrelevant under Federal Rule of Evidence 401 and should thus be
excluded under Federal Rule of Evidence 402.  In the alternative,
the Court should exclude the evidence under Federal Rule of
Evidence 403 because such evidence is likely to confuse the

issues, mislead the jury, and result in unfair prejudice to the
government.

A.   <u>Evidence of Prior Good Conduct is Irrelevant</u>

Federal Rule of Evidence 401 defines "relevant
evidence" as evidence that "has any tendency to make a fact more
or less probable than it would be without the evidence; and [...]
is of consequence in determining the action."  Federal Rule of
Evidence 402, in turn, provides, in pertinent part, that
"[i]rrelevant evidence is not admissible."

To prevail on the charges alleged in the indictment,
the government will need to prove the following elements beyond a
reasonable doubt.  As to Count Two, the government must prove
(i) that Romanello attempted to collect an extension of credit
from John Doe #1 and John Doe #2 on or about and between November
1, 2006 and May 31, 2008; (ii) that Romanello used extortionate
means to collect or attempt to collect the extension of credit;
and (iii) that Romanello knowingly participated in the use of
extortionate means.  <u>See</u> Sand, <u>et al.</u>, Modern Federal Jury
Instructions, Instruction No. 32-6.  With respect to Count Three,
the government must prove (i) that Romanello entered into an
unlawful agreement on or about and between November 1, 2006 and
May 31, 2008; and (ii) that Romanello knowingly and willfully
became a member of the conspiracy.  Evidence of prior good
conduct, such as defendant Romanello's service in the military,

his claim that he assists his ill wife and had treated some of
the witnesses in the case with kindness, is totally irrelevant to
any of the issues at trial.  Evidence or argument regarding such
issues should thus be excluded as irrelevant.

    B.   <u>Evidence of Prior Good Conduct is Unduly Prejudicial</u>

      In the alternative, the defendant should not be
permitted to introduce evidence of prior good conduct, such as
the type outlined above, under Federal Rule of Evidence 403
because such evidence is highly likely to confuse the issues,
mislead the jury, and could result in substantial unfair
prejudice to the government.

      Federal Rule of Evidence 403 provides that "[t]he court
may exclude relevant evidence if its probative value is
substantially outweighed by a danger of one or more of the
following: unfair prejudice, confusing the issues, misleading the
jury, undue delay, wasting time, or needlessly presenting
cumulative evidence."  "The prejudice that Rule 403 is concerned
with involves 'some adverse effect . . . beyond tending to prove
the fact or issue that justified its admission into evidence.'"
<u>United States v. Gelzer</u>, 50 F.3d 1133, 1139 (2d Cir. 1995)
(quoting <u>United States v. Figueroa</u>, 618 F.2d 934, 943 (2d Cir.
1980)); <u>see generally</u> 2 Weinstein's Federal Evidence
§ 403.04[1][b] at 403-37 (Joseph M. McLaughlin, ed., 2d ed. 2003)
("Unfairness may be found in any form of evidence that may cause

a jury to base its decision on something other than the established propositions in the case."); id. § 403.04[1][c] at 403-42 (observing that evidence designed to elicit sympathy for the defendant may be unduly prejudicial).

Assuming arguendo that any prior good conduct would be relevant, it should be excluded under Rule 403.  For example, the admission of any evidence of prior good conduct of the sort described above would present a substantial risk of confusing the jury.  The jurors could lose sight of the issues that they are being asked to decide, i.e., whether the defendant committed the essential elements of the charged offenses.  In addition, the introduction of such evidence could improperly invite jury nullification.  If presented with evidence about defendant Romanello's personal history and current circumstances, there is a significant possibility that the jurors will let sympathetic feelings for the defendant interfere with their duty to apply the law to the facts, which could result in substantial unfair prejudice to the government.

III. Romanello Should Be Precluded from Introducing Evidence
     of the Government's Alleged Motives in Prosecuting this Case

The government respectfully moves in limine to preclude the defense from presenting arguments to the jury concerning the government's alleged motives in prosecuting this case. Specifically, the government moves to prevent the defense from arguing that the government is prosecuting Anthony Romanello in

25

an effort to obtain his cooperation with law enforcement, as retribution for his refusal to do so, or from improper personal motives on the part of prosecutors and law enforcement agents.

The law is clear that arguments concerning an alleged improper governmental motive may be presented to the Court, but not the jury. Nevertheless, the same attorneys who are now counsel for the defendant Anthony Romanello attempted to present such arguments to the jury in the recent trial in <u>United States v. Anthony Antico</u>, 08-CR-559 (CBA), and they have signaled an intention to do so again in this case. For the reasons set forth below, the government respectfully requests that the Court preclude the defense from making such improper arguments to the jury in the upcoming trial.

A.   Any Claims By the Defense of an Improper Governmental Motive Present a Legal Question Properly Directed to the Court, Not the Jury

The United States Supreme Court has made clear that a claim that a prosecution has been brought selectively, or from improper motives, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." <u>United States v. Armstrong</u>, 517 U.S. 456, 463 (1996). "Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury." <u>United States v. Regan</u>, 103

F.3d 1072, 1082 (2d Cir. 1997) (internal quotation marks
omitted); accord United States v. Berrigan, 482 F.2d 171, 175 (3d
Cir. 1973) ("The question of discriminatory prosecution relates
not to the guilt or innocence of appellants, but rather addresses
itself to a constitutional defect in the institution of the
prosecution."); United States v. Marcum, 16 F.3d 599, 602 (4th
Cir. 1994) (same); United States v. Abboud, 438 F.3d 554, 579-80
(6th Cir. 2006) (same); United States v. Jones, 52 F.3d 924, 927
(11th Cir. 1995) ("selective prosecution is a defect in the
institution of the prosecution that has no bearing on the
determination of factual guilt"); United States v. Washington,
705 F.2d 489, 495 (D.C. Cir. 1983) ("the issue of selective
prosecution is one to be determined by the court . . . as it
relates to an issue of law entirely independent of the ultimate
issue of whether the defendant actually committed the crimes for
which she was charged").

 Any claim alleging a defect in the institution of the
prosecution based on alleged governmental motives must be raised
with the Court in advance of trial.  Fed. R. Crim. P.
12(b)(3)(A); United States v. Farhane, 634 F.3d 127, 167 (2d Cir.
2011).  A claim not made prior to the commencement of trial is
deemed waived.  See Fed. R. Crim. P. 12(e).

 Because the government's alleged motive in bringing
charges against a defendant is irrelevant to guilt, by asking the

jury to focus on this, the defense would be encouraging the jury to decide the case on the basis of something other than the elements of the charged crimes.  That is impermissible.  <u>See</u>, <u>e.g.</u>, <u>United States v. Rosado</u>, 728 F.2d 89, 93 (2d Cir. 1984) (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt"); <u>see also</u> <u>United States v. Thomas</u>, 116 F.3d 606, 615-16 (2d Cir. 1997) (noting that "trial courts have a duty to forestall or prevent jury nullification").  Courts therefore preclude criminal defendants from presenting such arguments to the jury in the opening and summation, as well as in cross examinations of the government's witnesses.

In <u>Farhane</u>, for example, Chief Judge Loretta Preska of the Southern District of New York sustained an objection by the government to defense counsel's argument in summation that the government had targeted the defendant for prosecution based on his religion.  634 F.3d at 166.  The court then instructed the jury as follows:

> Ladies and gentlemen, the decision of the government to investigate an individual or the decision of a grand jury to indict an individual is none of your concern. The only concern this jury has is whether or not the government has or has not proved each element[ ] of the crimes charged beyond a reasonable doubt.

28

Id.  On appeal, the Second Circuit unequivocally held that there was "no error in the district court's challenged rulings with respect to the defense summation" because "a selective prosecution defense alleges a defect in the institution of the prosecution, and as such is an issue for the court rather than the jury."  Id. at 167 (internal quotations omitted).

        Similarly, in United States v. Stewart, Judge Miriam Cedarbaum of the Southern District of New York granted the government's motion to preclude the defense from cross-examining government witnesses or arguing to the jury that the government's prosecution of Martha Stewart was driven by an improper motive. 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004).  The court explained:

> [T]he defense wishes to elicit from witnesses who are cooperating with the Government their understanding of the Government's eagerness to obtain evidence against Ms. Stewart.  But any evidence that raises questions of prosecutorial bias against Stewart has no bearing on the issues properly before the jury, including the credibility of cooperating witnesses.  Therefore, such evidence is inadmissible.  The defendants are, of course, free to raise questions about the credibility and reliability of cooperating witnesses.  But defendants may not use their ability to impeach such witnesses to introduce impermissible evidence of prosecutorial motive.

Id.

        As in Farhane and Stewart, this Court should preclude Romanello from presenting to the jury improper arguments

concerning alleged governmental motives because such arguments may only be presented to the Court.

   B.   Defense Counsel May Be Intending To Make Improper
        Governmental Motive Arguments to the Jury in the
        Upcoming Trial

        Despite the clarity of the law precluding arguments to the jury concerning alleged governmental motive, there is reason to believe that the defense may be planning to make such arguments in the upcoming trial.  Romanello's defense counsel recently tried to do just this in the United States v. Anthony Antico trial before this Court.  In the opening statement in that case, the defense contended that the government's prosecution of the defendant was motivated by two things:  (1) a vindictive desire to punish the defendant for not cooperating with the government; and (2) a desire to advance the careers of the government agents and prosecutors.  The defense's opening statement began as follows:

        May it please the Court, Judge Amon, Mr.
        Antico, Mr. Mari, members of the prosecution
        team, members of the jury, in November of
        2009 and January of 2010, the government
        made Anthony Antico an offer that he couldn't
        refuse, and he refused it.  And that's why
        we're here today.

(7/14/10 Tr. at 15:18-22).  The defense later continued:

        For law enforcement, the Mafia is a virtual
        mother's milk.  You get publicity, you get
        promotions, agents get promoted, prosecutors
        became mayors, governors, whatever.  And
        because of the lure and the allure of the
        Mafia and the prosecutions, what sometimes is

> just an ordinary street crime a robbery, a
> gambling, by ordinary street criminals,
> becomes something different, something
> bigger.  It becomes a racketeering charge.
> And that's precisely what we have here.  And
> that brings us back to the offer that the
> government made to Anthony Antico.

(Id. at 17:4-13).  Defense counsel then purported to explain why
the government was going to such "lengths" to prosecute his
client:

> And now let me tell you why they . . . go to
> these lengths.  Because in that November 2009
> trip by the government, two agents of the FBI
> went to see Anthony Antico over here at MDC
> in Brooklyn and they told him, they said,
> Anthony, if you don't cooperate with us and
> become a cooperator for the government and
> testify for us, we're going to indict you on
> this jeweler murder, the botched robbery and
> the murder.  They went there unannounced in
> November 2009.  No lawyers, no nothing, two
> FBI agents show up, George Khouzami and
> Jennifer King.  January 10, 2010, earlier
> this year, Mr. Antico has been shipped out to
> Tucson, Arizona.  Whether it's in retaliation
> for not immediately agreeing, who knows.

(Id. at 22:15-23:2).

The defense continued with these themes throughout the
trial, and even during the cross-examination of several of the
government's witnesses.  (See e.g., id. at 252:21-253:13; 300:16-
24; 409:8-20; 410:11-18).  Ultimately, upon questioning by the
Court, defense counsel frankly acknowledged the improper
intention of trying to impugn the government's motives in
prosecuting his client:

```
THE COURT:        What you were trying to
                  establish is that this
                  indictment is somehow some
                  vendetta against Mr. Antico
                  for failing to cooperate?

MR. McMAHON:      Precisely.
```

(Id. at 55:2-5).

The government anticipates that the defense is contemplating using this same improper tactic in the upcoming trial of Romanello. For example, the defendant signaled an intent to do so in a June 10, 2011 letter to the Honorable I. Leo Glasser in a previous case against Romanello. See United States v. Romanello, 10-Cr-919 (ILG), Docket Entry No. 33. Although the only issues under consideration were whether defense counsel had a conflict of interest and whether the defendant wished to waive the conflict, the defense nevertheless sought to interject the issue of the government's alleged motive in seeking the superseding indictment. They wrote: "if there is any conflict in this case it is the prosecutor's office and Agent George Khouzami who were responsible for murder, robbery and 924(c) charges being brought against Mr. Antico, which charges were unanimously repudiated by an Eastern District jury last year." Id.[6]

---

[6] Contrary to defense counsel's suggestion, the jury did not "repudiate" the case against Anthony Antico. Although he was acquitted on some counts, he was convicted of a racketeering conspiracy and is serving a nine year sentence.

Defense counsel should be precluded from making this type of argument to the jury in the upcoming trial.  Such an argument may be made to the Court – which Romanello already did before Judge Glasser – but not to the jury, <u>Regan</u>, 103 F.3d 1072, and it would be an improper attempt to encourage jury nullification, which courts are duty-bound to prevent.  <u>Thomas</u>, 116 F.3d at 615-16 ("trial courts have a duty to forestall or prevent jury nullification").

## CONCLUSION

For the reasons set forth herein, the Court should admit evidence regarding other acts of defendant Romanello and evidence regarding defendant Romanello's membership in and association with members of organized crime; and the testimony of a cooperating witness with respect to the organization, hierarchy, rules and customs of LCN.  In addition, for the reasons set forth in Parts II and III, the Court should grant the government's motion in limine to preclude the defendant from arguing about or admitting evidence of (1) prior good conduct or (2) the government's alleged motives in prosecuting this case.

Dated: Brooklyn, New York
       July 20, 2012

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

Amir H. Toossi
Jack Dennehy
       (Of Counsel)