

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TM:JD/AHT
F.#2011R02050

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 24, 2012

By Hand Delivery and ECF

The Honorable Carol B. Amon
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:  United States v. Anthony Romanello
             Criminal Dkt. No. 12-050 (S-6) (CBA)

Dear Chief Judge Amon:

      The government respectfully moves <u>in limine</u> to preclude cross-examination of cooperating witness Generoso Barbieri at trial with regard to incidents involving domestic disputes that are inadmissible under Rule 608(b) of the Federal Rules of Evidence.[1]

I.    Background

      At trial, the government expects to call Generoso Barbieri to testify regarding his knowledge of and participation in the affairs of the Bonanno crime family of La Cosa Nostra, his familiarity with the defendant, and specifically his involvement, along with the defendant, in a "sit down" in the mid-1990s.[2]

---

    [1]    Because of the nature of this motion, the government further respectfully requests that it be filed under seal, as well as the defendant's opposition and the Court's ruling.

    [2]    The evidence regarding Romanello's participation in this sit-down is relevant and inextricably intertwined with the government's proof of the charged extortion in that it explains

Barbieri has pled guilty in the Eastern District of New York, pursuant to a cooperation agreement, to racketeering conspiracy, including predicate acts of murder conspiracy and murder, illegal gambling and loansharking conspiracy.

Barbieri has advised the government that at various times in 2011, he and his wife were involved in various domestic disputes relating to their finances and accusations of marital infidelity. Both Barbieri and his wife have described these disputes to the government as verbal in nature, and no allegations of physical threats or violence have been made against Barbieri by his wife. Barbieri has never been arrested for or charged with acts of domestic violence.

The government is in possession of a CD containing (1) one conversation secretly recorded by Barbieri's wife, and (2) 15 recordings of messages left by Barbieri on his wife's voicemail. The recorded conversations took place between approximately September 25, 2011 and October 6, 2011.[3] In sum and substance,

---

how Barbieri met Romanello and is in a position to know about Romanello's involvement in organized crime. It is well settled that "'evidence of uncharged criminal activity is not considered other crimes evidence under Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)") if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)); see also United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994); United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (same). See also United States v. Pascarella, 84 F.3d 61, 72 (2d Cir. 1996) (reiterating that evidence of prior acts is properly admitted to inform "the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators").

[3] The recordings contain personal information regarding Barbieri and his wife, including their present whereabouts and telephone numbers. These facts, coupled with the nature and extent of Barbieri's cooperation with the government and the couple's former participation in the Witness Security program, necessitate summarizing the conversations herein as opposed to disclosing the recordings themselves. The government will

Barbieri makes various demands, in a loud tone of voice and sometimes using obscene language, for the return of money he believes his wife has taken from him and for his wife to discontinue an affair Barbieri believes she is having with another man. During the recordings, Barbieri made the following statements, in relevant part:

- "I want my fuckin' money."

- "Dare me what to do to him, fuckin' my wife, you'll see what I'm gonna do to him....he's fuckin' dead."

- "I'm gonna kill this fuckin' faggot."

- "I'm gonna hurt him."

- "I'll blow his fuckin' brains out."

- "I'll go back to prison, I don't care."

- "I'll show him who the real Genero is, this Irish scumbag."

- "Get in touch with me or me and your boyfriend are gonna see each other in person, see how tough everyone is."

II. Analysis

With respect to the disputes described above, the government respectfully seeks an order precluding cross-examination of Barbieri regarding his domestic disputes with his wife, including his recorded statements. Rule 608(b) provides that "[s]pecific instances of conduct of a witness" may be inquired into on cross-examination "if probative of truthfulness or untruthfulness." As Judge Glasser observed in interpreting Rule 608(b), "[i]f all that can be said about behavior is that it might be called improper, immoral, or unlawful . . . asking about it cannot be justified under Fed. R. Ev. 608." United States v. Stone, Cr. No. 05-401 (ILG), 2007 WL 4410054, at *1 (E.D.N.Y. Dec. 14, 2007) (internal quotation marks and citation omitted).

There can be no dispute that a witness's prior acts of violence have no bearing on his character for truthfulness or

---

provide a copy of the recordings for the Court's in camera inspection if necessary.

4

untruthfulness.[4]  See United States v. Hayes, 553 F.2d 824, 827 (2d Cir. 1977) (finding that "crimes of force, such as armed robbery or assault . . . do not come within this clause" requiring the evidence to "bear directly on the likelihood that the defendant will testify truthfully"); Eng v. Scully, 146 F.R.D. 74, 78 (S.D.N.Y. 1993) ("Murder is not necessarily indicative of truthfulness, and the probative value of a murder conviction is substantially outweighed by the danger of unfair prejudice.").  Accordingly, courts have routinely barred defense counsel from cross-examining government witnesses regarding prior acts of violence, including allegations of rape and child molestation.  See United States v. Rosa, 11 F.3d 315, 336 (2d Cir. 1993) (affirming district court's ruling prohibiting cross-examination concerning alleged rape "as having an insufficient bearing on the witness's credibility"); United States v. Rabinowitz, 578 F.2d 910, 912 (2d Cir. 1978) (affirming district court's preclusion of cross-examination into witness's prior acts of sodomy of young children because "[w]e fail to see the logical relevance of the evidence sought to be adduced . . . to the credibility of the witness"); United States v. Devery, 935 F. Supp. 393, 406-08 (S.D.N.Y. 1996) (excluding cross-examination of government witness's alleged multiple rapes of stepdaughter); see also United States v. Nosov, 221 F. Supp. 2d 445, 449 (S.D.N.Y. 2002) ("Given that fellow judges in this district have held that crimes such as rape and murder have little bearing on a witness' capacity for truthfulness, a ruling that [the cooperating witness'] scheme to produce pornographic films, itself not a crime, somehow reflected adversely upon his character for truthfulness would indeed be an anomaly.").

The Court has broad discretion in decisions regarding the scope and extent of cross-examination.  A "trial judge has 'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things . . . interrogation that is repetitive or only marginally relevant.'"  United States v. Maldonado-Rivera, 922 F.2d 934, 956 (2d Cir. 1990) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).  "It is settled that 'the scope and extent of cross-examination lies within the discretion of the trial judge.'"  United States v. Scarpa, 913 F.2d 993, 1018 (2d Cir. 1990) (quoting United States v. Blanco, 861 F.2d 773, 781 (2d Cir. 1988)).

---

[4]   Here, although threats of violence have been made by Barbieri, no allegation of any act of violence by him has been established.

Here, the witness does not deny that he made the statements captured on the recordings to his wife. Additionally, the statements themselves are not probative of the witness's truthfulness or untruthfulness. The government thus respectfully submits that the defendant should be prohibited from using these statements to cross examine the witness pursuant to Rule 608(b). Similarly, the statements are not admissible pursuant to Rule 609(a)(1), which permits a defendant to attack the credibility of a witness through evidence of felony convictions falling within a specified time period. Here, there were no convictions at all. Therefore, any attempt by the defendant to introduce in this case the fact that Barbieri has been involved in domestic disputes involving threats would serve only the non-permissible purpose of embarrassing the cooperating witness.

Moreover, ample areas of unfettered cross-examination of Barbieri, including prior acts of violence, remain available to the defendant. For example, Barbieri has participated in murders and assaults, and the government has no objection to defense counsel's elicitation of this and other evidence of the cooperating witness's participation in numerous other crimes – including extortion, loansharking and weapons possession.

III. Conclusion

For all the reasons set forth above, the government respectfully submits that the defendant should be precluded from cross-examining Generoso Barbieri concerning the aforementioned domestic disputes.

Respectfully Submitted,

LORETTA E. LYNCH
UNITED STATES ATTORNEY

By: ____/s/_____
Jack Dennehy
Amir H. Toossi
Assistant U.S. Attorneys

cc: Gerald McMahon, Esq. (via email)
    Matthew Mari, Esq. (via email)