

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:AHT/JD  
F.#2011R02050

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 31, 2012

<u>By Hand Delivery</u>

The Honorable Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  <u>United States v. Anthony Romanello</u>
           <u>Criminal Docket No. 12-50 (S-6)(CBA)</u>

Dear Chief Judge Amon:

      The government respectfully moves <u>in limine</u> to introduce evidence of the defendant Anthony Romanello's 2007 conviction in the Southern District of New York for conspiracy to obstruct justice and subsequent sentence of six months of house arrest. For the reasons set forth below, the evidence that the government seeks to introduce at trial is admissible because it is relevant to the issue of identity and the probative value of the evidence outweighs any potential prejudice to the defendant.

I.   <u>Statement of Facts</u>

   A.  <u>The Defendant</u>

      Evidence at trial will establish that defendant Anthony Romanello, also known as "Rom," is an inducted member and acting captain of the Genovese crime family, a violent criminal enterprise that engages in a litany of crimes, including extortion, murder, assault, and other crimes intended to obstruct justice.

      In 2006, Romanello was arrested and charged in the United States District Court for the Southern District of New York with to conspiracy to obstruct justice, in violation of 18 U.S.C. 1512(b) and (k). In 2007, Romanello pleaded guilty to that charge and was sentenced to two years of probation and six

months of home confinement. Romanello began his home confinement in approximately August 2007.

### B. The Nature of the Instant Charges

The Superseding Indictment charges Romanello with substantive counts (Counts Two and Three) of extortion and extortion conspiracy. More particularly, Romanello is charged, along with Nicholas Santora, with extortion and extortion conspiracy related to John Doe #1 and John Doe #2, between approximately November 1, 2006 and May 30, 2008. The evidence of this crime will come from consensual recordings, cooperating witness testimony, testimony of federal agents who supervised the investigation, and testimony regarding the rules, structure, hierarchy and protocols of La Cosa Nostra ("LCN"), particularly with respect to the Bonanno and Genovese crime families, and the relationship that exists between members and associates of the five families of LCN.

Beginning in 2006, John Doe #1 began cooperating with law enforcement. At that time, John Doe #1 was on record with Vito Badamo, a Bonanno family soldier assigned to Santora's crew. In the summer of 2006, Rocky Napoli, a partner at First Capital Mortgage in Mineola, New York, loaned John Doe #1 $30,000, a loan that John Doe #1 did not intend to pay back because he felt that Napoli owed him money for a mortgage refinancing referral. A month later, Napoli demanded repayment. When John Doe #1 refused, Napoli sought to collect the money through Romanello, a captain in the Genovese crime family. In response, John Doe #1 sought Santora for representation at an organized crime "sit-down" with Romanello, and John Doe #1 recorded the "sit-down," initially attended by Badamo, Santora, Romanello and Napoli, and later joined by John Doe #1. At the "sit-down," Santora and Romanello discussed who would be responsible for which payments.

After the "sit-down" on January 11, 2007, John Doe #1 continued to record conversations with Badamo and Anthony Santoro, which demonstrate that John Doe #1 and John Doe #2 were extorted and the proceeds of the extortion were delivered to Romanello. On March 26, 2007, Badamo informed John Doe #1 that John Doe #1 would have to pay "12 or 15." Later, on April 25, 2007, Badamo told John Doe #1 that John Doe #2 would pay the rest of the money owed to Napoli but that Napoli "has to get paid first." On April 27, 2007, Badamo told John Doe #1 that "there's no way around" paying Romanello. Badamo stated that "we" (referring to the Bonanno family) did something to "them" (referring to the Genovese family) that had nothing to do with

2

Badamo or Romanello, but that John Doe #1's money was being used to compensate the Genovese family. On September 10, 2007, John Doe #1 delivered $1,400 to Badamo; on another occasion John Doe #1 delivered $5,000 to Badamo for payment towards the debt to "Rom." On December 10, 2007, Badamo confirmed that the money had been delivered to "Rom" and that "Rom" was thankful that the money was delivered to him despite his home confinement. At that time, Badamo stated that "Rom" said "when you're in a house arrest or on the -- which we know -- they forget you." John Doe #1 responded, "Uh-huh. Got himself a pretty good deal, house arrest."

II. <u>Argument</u>

Evidence of Romanello's prior conviction and house arrest is admissible pursuant Federal Rule of Evidence 404(b). Specifically, the proffered evidence demonstrates the defendant's identity as a co-conspirator with respect to the instant charges.

A. <u>Applicable Law</u>

The Second Circuit follows an "inclusionary" approach to 404(b) evidence. <u>United States v. Pascarella</u>, 84 F.3d 61, 69 (2d Cir. 1996). Accordingly, evidence of prior bad acts is admissible "unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." <u>Id</u>. (internal citations omitted); <u>see also</u> <u>Huddleston v. United States</u>, 485 U.S. 681 (1988); <u>United States v. Williams</u>, 205 F.3d 23, 33 (2d Cir. 2000).

The Second Circuit has repeatedly and consistently held that evidence pertaining to identifying a defendant is relevant and admissible under 404(b). <u>See</u> <u>United States v. Walker</u>, 24 Fed. Appx. 57, 61 (2d Cir. 2001) (holding that the trial court properly admitted evidence that the defendant previously pled guilty when the use of that evidence proved the defendant's identity); <u>see generally</u> <u>United States v. Sappe</u>, 898 F.2d 878 (2d Cir. 1990); <u>United States v. Mills</u>, 895 F.2d 897 (2d Cir. 1990).

B. <u>Analysis</u>

As discussed above, in the conversations between Badamo and John Doe #1, the two men repeatedly refer to the recipient of the payments as "Rom." Thus, it is essential to the government's case to demonstrate that the defendant is, in fact, the "Rom" referred to in the recordings. The evidence of Romanello's 2007 house arrest demonstrates that "Rom" and the defendant are the

3

same individual, because there is a reference to "Rom" being under house arrest at the time of the recordings. For example, on December 10, 2007, John Doe #1 asked Badamo if he has heard back from Rom, to which Badamo responds, "He said everybody, when you're in a house arrest or on the -- which we know -- they forget you." John Doe #1 responds, "Uh-huh. Got himself a pretty good deal, house arrest." Accordingly, evidence of the defendant's house arrest in 2007 is probative as to the identity of "Rom."

The Second Circuit has upheld the admission of similar evidence. In Walker, the government sought to introduce evidence that the defendant pleaded guilty to a felony carrying a potential term of 10 to 20 years' imprisonment in order to prove the defendant's identity as a speaker in a tape-recorded conversation. Walker, 24 Fed. Appx. at 61. In the recorded conversation, a speaker said that "he" had "copped out" to "10 to 20." Id. The Second Circuit held that the district court properly allowed the government to introduce this evidence, because it "tended to show that [the defendant] was the second speaker on the tape," and thus properly demonstrated the defendant's identity. Id.

Here, the evidence of Romanello's prior guilty plea and subsequent home confinement likewise identifies the "Rom" discussed in the recordings as the defendant. Accordingly, evidence of the defendant's conviction and home confinement should be admitted into evidence.

Furthermore, the probative value of this evidence is not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. See, e.g., United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)(in prosecution for conspiracy to distribute drugs, evidence of defendant's prior drug dealing with co-conspirator was not unduly prejudicial). Here, the government seeks to introduce evidence of the circumstances of the defendant's status of home confinement in order to identify the defendant. The Second Circuit has permitted the introduction of far more potentially prejudicial evidence in comparable circumstances. See id. at 804 (probative value of informant's testimony concerning pre-existing drug trafficking relationship with defendant outweighed potential prejudicial effect); Walker, 24 Fed. Appx. at 61.

Given the highly probative value of the evidence here, any prejudicial impact is, by comparison, wholly insufficient to justify its exclusion. Even were there a danger of undue prejudice, any such risk could be mitigated effectively by a

cautionary instruction limiting the jury's consideration of the evidence to the purposes for which it is offered. See, e.g., United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991); United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984).

III. Conclusion

       For the reasons set forth herein, the Court should admit evidence of the defendant's house arrest in 2007.

                                       Respectfully submitted,

                                       LORETTA E. LYNCH
                                       United States Attorney

                           By:    ____/s/_____
                                       Amir H. Toossi
                                       Jack Dennehy
                                       Assistant U.S. Attorneys
                                       (718) 254-6176/6133

cc:   Gerald McMahon, Esq. (by ECF)